### ALABAMA & G. MANUF'G CO. et al. v. ROBINSON.

(Circuit Court of Appeals, Fifth Circuit. May 30, 1893.)

No. 97.

1. MORTGAGE BONDS—PROVISION FOR MATURITY OF PRINCIPAL ON DEFAULT IN INTEREST—CONSTRUCTION.

Certain mortgage bonds provided that "it is hereby expressly agreed by said company, with each and any holder of this bond, that, in case of the nonpayment of any interest coupon hereto attached, if such default shall continue for six months after maturity and demand of payment, the principal of this bond shall become immediately due." Held, that this six months was not in addition to days of grace, but was to run from the date on which the coupons were expressed to be due, and, although a default continued but two days more than the six months, the holders were entitled to declare the principal immediately due.

2. SAME.

The above-quoted recitation in the bonds restricted the provision for the maturity thereof for nonpayment of interest to the particular bond or bonds on which interest was not paid.

3. SAME—WAIVER—ACCEPTANCE OF INTEREST.

An acceptance of interest after the default had continued longer than six months was a waiver of the right to declare the bonds matured.

4. FORECLOSURE DECREE.

It appearing, in a foreclosure suit, that the interest was paid on some of the bonds, it was necessary to take an account of the bonds which were properly declared to have matured; and a decree which adjudged all the bonds to be due was erroneous, and should be reversed.

5. TRUST DEED—FORECLOSURE—NOTICE.

A trust deed made by a manufacturing corporation to secure its bonds empowered the trustees, on default of interest payments, to sell the property, "if, after notice is served on the president of said company, the same shall remain unpaid for six months after such default." Held, that when the trustees sued to foreclose, instead of selling under the power, it was unnecessary to aver the giving of notice of default to the defendant. 48 Fed. Rep. 12, affirmed.

6. SAME—SINGLE TRUSTEE'S RIGHT TO SUE—PLEADING.

One of three trustees in a trust deed is entitled to sue alone for foreclosure, when he avers that one of the others is dead, and that the remaining one, who is made a defendant, at a sale of the property under decree of a state court, claimed to be interested in the purchase thereof, and "is interested adversely to your orator, as trustee of said bondholders." 48 Fed. Rep. 12, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

In Equity. Suit by J. J. Robinson, trustee, against the Alabama & Georgia Manufacturing Company, the Huguley Manufacturing Company, and William T. Huguley, to foreclose a trust deed given by the first-mentioned company. A demurrer to the bill was over-

ruled, (63 Fed. Rep. 12,) and a decree of foreclosure was entered. Subsequently, the case was heard on demurrer to a petition for attorneys' fees, and the demurrer was sustained. 51 Fed. Rep. 268. Defendants appeal from the foreclosure decree. Reversed.

John M. Chilton, Allen Fort, and W. S. Thorington, (Brickell, Semple & Gunter, on the brief,) for appellants.

B. F. Abbott, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

McCORMICK, Circuit Judge. The Alabama & Georgia Manufacturing Company issued bonds to the amount of $65,000. In the mortgage to secure the same it is stipulated:

"To provide for the payment of the bonds aforesaid, and the interest thereon, at the time and place when and where the same shall respectively fall due and payable, the said J. J. Robinson, W. C. Yancey, and W. T. Huguley, or a majority of them, or their survivors and successors, are hereby authorized and empowered, should default be made in the payment of said bonds when they fall due, or in the payment of the interest on said bonds as it shall accrue, then, immediately on such default being made known by the holder or holders of said bonds, the holder or holders of said coupons attached thereto, and if, after notice is served upon the president of said company, the same shall remain unpaid for six months after such default shall have been made in the payment of said interest or principal, as the case may be, and at the request of any one or more of the holders of said bonds or coupons, and without any other or further authority from the said Alabama & Georgia Manufacturing Company, upon giving sixty days' notice of the time and place of sale, together with the description of the property, in a newspaper published in the cities of Atlanta, La Grange, and West Point, Georgia, to proceed to sell at public auction, at the office of said company, in the city of West Point, Georgia, for cash, the property herein conveyed, or a sufficient amount of the same to pay the amount due, and apply the proceeds of the sale," etc.

In each of the bonds there is this provision:

"The Alabama & Georgia Manufacturing Company hereby acknowledges itself indebted, for value received, to the bearer hereof, in the sum of five hundred dollars, in lawful money of the United States of America, to be paid at the office of the company, in West Point, Georgia, on the first day of January, 1904, with interest at the rate of eight per cent. per annum, payable on the first day of January and the first day of July of each year, until the said principal shall be fully paid, on the presentation of the annexed coupons as they respectively become due. And it is hereby expressly agreed by said company, with each and any holder of this bond, that in the case of the nonpayment of any interest coupon hereto attached, if such default shall continue for six months after maturity and demand of payment, the principal of this bond shall become immediately due and collectible."

Subsequently, in a suit between stockholders and unsecured creditors of the company, all of its property was put in charge of a receiver by a state court, and in the course of proceeding ordered sold subject to the foregoing mortgage, and passed by these proceedings to the Huguley Manufacturing Company. While said property was in the hands of the receiver of the state court, interest was paid on said bonds within six months after the maturity of the coupons, but not promptly at maturity, or within the days of grace; and after the Huguley Manufacturing Company purchased and took control of this property it paid interest which matured in January,

1890, in June of that year, and the interest that matured 1st of July, 1890, it endeavored to place in Atlanta, Ga., by the 31st of December of that year; but by some means the remittance was delayed, and did not reach Atlanta in time to be available for the payment of interest at that point until January 2, 1891. Thereupon, the holders of the majority of the bonds claimed that there was such a default in the payment of interest as authorized them to treat the bonds as matured, and procured the bringing of the suit by the trustee, J. J. Robinson. Demurrers were submitted, and were properly overruled for the reasons given in the opinion of the eminent judges who passed on said demurrers. One of the trustees being dead, the power and duties of the trustees devolved on the survivors. Perry, Trusts, § 343. W. T. Huguley is clearly shown to have had an interest adverse to the trust, and being before the court as a party to the suit, though named as a defendant in the bill, we consider it was in the power of the court to permit the single trustee to proceed.

The circuit court held that days of grace were not to be allowed on these coupons, and this is assigned as error. We do not express any views as to whether, by the general commercial law, or by the law of Georgia, these coupons were or not entitled to days of grace, for the reason that we consider it immaterial in this case. The coupons, in express terms, on their face, were payable on the 1st day of July, 1890. If they were entitled to grace, they were not subject to protest or action thereon—that is, to be dishonored—until the expiration of the days of grace; but, not being paid at any time during this period of grace, they were dishonored, and the office of grace was exhausted. Now, for an entirely different purpose, the contract in this case provided another period of grace,—not an additional period, but another; not to be tacked onto the expiration of the period of commercial grace, but, like the days of commercial grace, to be computed from the day of payment named in the promise to pay,—and that period expired before the 2d of January, 1891.

All of the previous conduct of the appellant shows that its officers and legal advisers so construed this contract for six months' grace. The appellant did not owe these bonds and coupons. Its property was subject to their payment according to their terms. It was not charged, and it did not concern itself, to save these coupons and bonds from dishonor; did not, in other words, claim or accept and use commercial grace, but, on the contrary, systematically rejected this beneficence, and availed itself of the utmost limit of the contract grace that could consist with saving its property from the contingent maturity of these bonds. The money to pay the January, 1890, interest was deposited in the bank in Atlanta, June 30, 1890. The check for the money to pay the July, 1890, interest did not leave St. Louis until after banking hours, December 29, 1890, and by the utmost dispatch could not have reached Atlanta in time to be available before the beginning of banking hours, December 31, 1890. We consider this practical construction of this provision the sound one. The check did not reach

the bank in time to be available before January 2, 1891, after the contract grace had expired, drawing with it the consequences expressed, unless waived by the holders. No provision having been made for the payment of these coupons at maturity, whether maturing without or with grace, at West Point or elsewhere, the holders were under no obligation, legal or moral, to hunt for a payor in Atlanta or elsewhere. The appellant, if it would have saved the consequences of the default, should have made payment or tender of payment, or used such reasonable endeavors to find the holders, and make the payment or tender, as would be taken as equivalent therefor. This it did not do. While forfeitures are not favored by courts, the systematic continuance for the longest possible time in the nonpayment after maturity of these interest coupons was such as does not commend the appellants to the favor of a court of conscience. Here time was the essence of the contract. The bonds had been dishonored by three successive defaults in the payment of interest. The holders might well be indulged some strictness in requiring that the party interested in preventing the contingent maturity of these bonds should keep within their letter, and said holders should not be held bound to have received their interest, even if tendered, on or after January 2, 1891. Some of the holders of these coupons, however, did receive that interest from the appellant, and surrendered said coupons. This must be held a waiver of the default as to those bonds from which such paid and surrendered coupons had been detached. It is certain, therefore, that all of the bonds had not matured when this suit was filed. It was the duty of the complainant to show how many of the bonds had matured. This has not been done. The complainant's prayer is: "(1) That an account be taken of the holders of said bonds, and the amount for principal and interest due them, and each of them." What is indispensable in a decree of foreclosure and sale, such as asked in this case, and which the decree appealed from purported to grant, "is that there should be declared the fact, nature, and extent of the default which constituted the breach of the condition of the mortgage, and which justified the complainant in filing his bill to foreclose it, and the amount due on account thereof, which * * * the mortgagor is required to pay within a reasonable time, to be fixed by the court, and which, if not paid, a sale of the mortgaged premises is directed." Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. Rep. 10. In the case just cited the doctrine is clearly stated, and the authorities sufficiently cited and reviewed. We construe the recitation in the bond in this case to control and restrict the provisions for the maturity of the bonds on account of the nonpayment of interest to the particular bond or bonds on which the interest was not paid. It being clearly shown that interest was paid on some of these bonds, it was manifestly necessary for the account prayed for to have been taken; and as no such account was taken, and the decree adjudged the principal and interest of the whole issue of the bonds to be due, it is obvious that there was such a substantial error in that finding as must, on appeal, vitiate all subsequent proceedings. Therefore, on this ground,

we must reverse the decree appealed from, and remand the case to be proceeded with in accordance with the views herein expressed.

Ordered that the decree of foreclosure and sale be reversed, and cause remanded