ALABAMA & G. MFG. CO. et al. v. RIVERDALE COTTON MILLS.

(Circuit Court of Appeals, Fifth Circuit. January 12, 1904.)

No. 1,258.

1. JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—CORPORATION CHARTERED BY TWO STATES.

The states of Georgia and Alabama each chartered a corporation having the same name and the same incorporators, conferring thereon certain riparian rights on the Chattahoochee river. The business was conducted as that of a single corporation, having one set of officers, and a dam and manufacturing plant were built on the river, partly in each state. Thereafter a mortgage was executed on the property in the name of the corporation, it not being stated of which state it was a corporation, and subsequently the property was sold, subject to the mortgage, to a second corporation of Alabama. Later a suit to foreclose was brought against the mortgagor and its successor in interest in the federal court for Georgia by the trustee, who was a citizen of Alabama, it being alleged that the defendants were citizens of Georgia. Answers were filed admitting such allegation, and the cause proceeded to a decree and sale, a third corporation being the purchaser of the property. *Held*, that it was beyond the power of the state of Alabama to so combine the original corporation it created with one of Georgia as to make it a citizen of that state for jurisdictional purposes, and also beyond the power of the corporations themselves to do so by any action of theirs or manner of conducting their business; and, since neither of the Alabama corporations could be parties defendant to the foreclosure suit without ousting the jurisdiction of the court, neither they nor their property rights in Alabama were affected by the decree and sale, and a bill by the purchaser thereunder to restrain them from maintaining a suit in Alabama in relation to such rights was not within the jurisdiction of the federal court in Georgia as ancillary to the foreclosure suit.

Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Marion Erwin, for appellants.
Thos. H. Watts, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. In our opinion the Circuit Court erred in taking jurisdiction of appellee's bill.

On February 7, 1866 (Acts 1865–66, pp. 259–261), the state of Alabama passed an act to incorporate the Alabama & Georgia Manufacturing Company, the provisions of which act are as follows:

"Section 1. Be it enacted by the Senate and House of Representatives of the state of Alabama in General Assembly convened, that James Metcalf, George Huguley, Benjamin H. Hill, William P. Chilton and George W. Huguley, together with such other persons as hereafter may be associated with them, and their successors, be and they are hereby made and constituted a body corporate in fact and in name, under the name, style and title of 'The Alabama and Georgia Manufacturing Company,' and by that name shall be, and are hereby made able and capable at law, to have, hold, receive and purchase, possess and enjoy to them and their successors all real and personal estate, of what-

---

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

127 F.—32

ever kind or amount said corporation may deem necessary to carry all the objects of said corporation into full force and effect, and may sell, grant, convey or otherwise dispose of the same, and may sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts having competent jurisdiction; to make, use and have a common seal, and the same to alter, break and review at pleasure, and to do all the acts incident to a body corporate and politic.

"Sec. 2. Be it further enacted, that the objects of said corporation shall be the manufacture of wool and cotton into thread and cloth, the manufacture of meal, flour, lumber, shingles, boards and machinery of any description, or such branches or parts thereof as they see proper to engage in. The place of business shall be on the Chattahoochee river, in the neighborhood of Campbell's Mills, in the county of Chambers and in the state of Alabama; and to enable the said persons named in the first section of this charter to carry out the purposes of this charter, they and their successors and associates may control and use the water of the Chattahoochee river, so far as the riparian rights of this state are concerned, by locks, dams, canals, or otherwise, for manufacturing purposes generally; and to secure their property against loss by fire or other injuries may prevent persons from building fires or camping within two hundred yards of the factory buildings.

"Sec. 3. Be it further enacted, that said body corporate shall have power to prescribe the number of shares into which the capital stock of said corporation shall be divided, the mode in which it shall be taken, paid, transferred or assigned, and also to prescribe votes to which each share shall be entitled; that the rules adopted shall be uniform, equally securing the rights of each stockholder; and also to provide for the election of such officers as may be deemed necessary for the government and management of the affairs of the corporation, to ordain, establish, and put in execution such by-laws, ordinances and resolutions as they shall deem necessary and expedient for the government of said corporation, not inconsistent with the Constitution and laws of the state of Alabama, or of the United States; and in general to do and execute all and singular the acts, matters and things which may be necessary for manufacturing.

"Sec. 4. Be it further enacted, that said corporation shall not exercise banking privileges, but is authorized to carry the foregoing granted powers into execution, according to the true intent and meaning thereof.

"Sec. 5. Be it further enacted, that said corporation shall have the power to borrow money and to loan out its surplus earnings on similar security or mortgage, and to ordain such rules and regulations in respect to stockholders who refuse to pay up any balance on their stock, and to compel him to pay upon penalty of forfeiture to said corporation: provided, no stockholders shall be liable beyond the amount of his, her, or their stock."

On March 21, 1866 (Laws 1865–66, p. 130), the state of Georgia enacted as follows:

"An act to incorporate the Alabama and Georgia Manufacturing Company.

"Section 1. Be it enacted, by the Senate and House of Representatives of the state of Georgia, in General Assembly met, that James Metcalf, George Huguley, Benjamin H. Hill, William P. Chilton, and Geo. W. Huguley, together with such other persons as may hereafter be associated with them and their successors, be, and they are hereby made and constituted a body corporate in fact and in name, under the name, style and title of the Alabama and Georgia Manufacturing Company, and by that name shall be, and they are hereby made, able and capable at law, to have, hold, receive, purchase, possess and enjoy, to them and their successors, all real and personal estate of whatever kind or amount said corporation may deem necessary to carry all the objects of said corporation into full force and effect, and may sell, grant, convey, or otherwise dispose of the same, and may sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all courts having competent jurisdiction; to make, use and have a common seal, and the same to alter, break and renew at pleasure, and to do all other acts incident to a body corporate and politic.

"Sec. 2. That the objects of said corporation shall be the manufacture of

wool and cotton into thread and cloth, the manufacture of meal, flour, lumber, shingles, boards, and machinery of any description, or such branches or parts thereof as they see proper to engage in. And to enable the said persons named in the first section of this charter to carry out the purposes of this charter, they and their successors, and associates, may control and use the water of the Chattahoochee river, so far as the riparian rights of this state are concerned, by locks, dams, canals, or otherwise, for manufacturing purposes generally: provided, that nothing in this act shall be so construed as to give said corporators, or their successors, the privileges to interfere with, or disturb the vested rights of any person or persons whomsoever, either on the east or west bank, or islands in, the Chattahoochee river, and that said dams, locks, and canals shall not extend more than half way across said river, from the west side, and to secure their property against loss by fire, or other injuries, may prevent persons from building fires, or camping, within two hundred yards of the factory buildings.

"Sec. 3. That said body corporate shall have power to prescribe the number of shares into which the capital stock of said corporation shall be divided, the mode in which it shall be taken, paid, transferred, or assigned, and also to provide the mode by which stockholders may vote, and the number of votes to which each share shall be entitled; that the rules adopted shall be uniform, equally securing the rights of each stockholder, and also to provide for the election of such officers as may be deemed necessary for the government and management of the affairs of the corporation; to ordain, establish, and put into execution, such by-laws, ordinances, and resolutions, as they shall deem necessary and expedient for the government of said corporation, not inconsistent with the Constitution and laws of the state of Georgia, or of the United States, and in general to do and execute, all and singular, the acts, matters and things, which may be deemed necessary for manufacturing.

"Sec. 4. That said corporation shall not exercise banking privileges, but is authorized to carry the foregoing granted powers into execution, according to the true intent and meaning thereof.

"Sec. 5. That said corporation shall have the power to borrow money on mortgage, or other security, and to loan out its surplus earnings on similar securities, or mortgage, and to ordain such rules and regulations with respect to stockholders who refuse to pay up any balances on their stock, as well as compel them to pay upon penalty of forfeiture such stock to said corporation; provided no stockholder shall be liable beyond the value of his, her, or their stock.

"Sec. 6. That said corporation shall have the right and privilege to build, erect, make and preserve all dams, locks, canals, abutments. or other needful structures half way across said Chattahoochee river, as may be necessary to give them the greatest amount of water power, and to use for that purpose the islands contiguous to their lands for abutments and dams, and to erect all needful buildings on the east side of the river, and to carry on any of the business and manufactures, or any branch, or branches, of the same, in this state, that said charter authorizes them to engage in, or carry on in the state of Alabama, and generally to do all acts coming within the legitimate scope of their business and objects aforesaid, which usually belong to bodies corporate and politic.

"Sec. 7. That the private property of the stockholders shall be liable for the debts of said corporation, to the amount of their subscribed stock not paid in at the time any suit may be commenced.

"Sec. 8. That the capital stock of said company shall be fifty thousand dollars, with permission to increase the same to one million dollars, which stock shall be divided into shares of one hundred dollars each.

"Sec. 9. That nothing in this act shall be so construed as to prevent the Legislature from taxing the property of said company as other property in this state.

"Sec. 10. That said corporation shall not organize or commence business until the capital stock shall have been subscribed and ten per cent. of the same paid in.

"Sec. 11. That the place of business of said corporation shall be Columbus, Georgia, or Lagrange, Georgia."

. On the 2d day of January, 1884, the Alabama & Georgia Manufacturing Company, as party of the first part, "at its office in the city of West Point," executed a certain instrument of mortgage, conveying to trustees therein named lands therein specifically described, including a 40-foot right of way from the factory building to the public road leading from West Point, Ga., to Berlin, Ala., at any point where the factory company may locate it, including all the tenements and improvements, including the cotton mill and all the machinery therein or thereto belonging, and all water privileges and riparian rights now owned and enjoyed by the said party of the first part. This instrument recites that. "at a meeting of the board of directors of the Alabama and Georgia Manufacturing Company, held at the office of said company, in the city of West Point, state of Georgia, on the 17th day of October, 1883, a majority of said board of directors being present, the following resolutions were adopted," etc.; the substance of the resolutions being to authorize the issuance of bonds and the execution of a mortgage to secure the same.

On January 20, 1891, J. J. Robinson, one of the trustees named in the mortgage, verified his bill addressed to the judge of the Circuit Court of the United States for the Northern District of Georgia, seeking, on grounds therein stated, a foreclosure of the mortgage, and presented the same to one of the judges of that court, who on the next day passed an order "that defendants show cause * * * on Saturday, the 31st of January, 1891, why an injunction should not issue and a receiver be appointed as prayed for in the bill." The first paragraph of the bill says "that J. J. Robinson, as trustee, for the purposes hereinafter stated, who avers himself to be a citizen of and resident in the state of Alabama, brings this his bill against the Alabama · & Georgia Manufacturing Company, a corporation created under and by virtue of the laws of the state of Georgia, and a resident and citizen of said Northern District of Georgia, and against the Huguley Manufacturing Company, a corporation created under the laws of said state of Georgia, and a resident and citizen of said state of Georgia and of the Northern District of such state, and against W. T. Huguley, who your orator avers to be a citizen of said state of Georgia, and residing in said Northern District of Georgia." In another paragraph it is alleged "that under and by virtue of a decree in chancery issuing out of the superior court of Troup county, Ga., at ―――― term, 1898, all of the property of the said Alabama & Georgia Manufacturing Company covered by said deed of trust was sold by the sheriff of Harris county, Georgia, on the first Tuesday in January, 1890, and purchased by certain persons, who afterwards, as orator is informed, conveyed or otherwise disposed of the same to said Huguley Manufacturing Company, defendants herein, and said last-named corporation is now in possession of the same, claiming said property under said sale." The second clause of the prayer is that orator may have a decree in his favor against the Alabama & Georgia Manufacturing Company; that it shall pay the sums found to be due orator as trustee for bondholders, etc., by a short day to be named by the court; and that in default the company and any and all persons claiming under it be absolutely debarred and forever foreclosed of and from all equity of redemption in and to said

mortgaged premises and every part thereof. The mortgage is attached as an exhibit to the bill.

The record shows the following agreement of counsel:

"The plaintiff in the foregoing bill hereby agrees that he will not for the present press the application for injunction and receiver without giving at least thirty days' notice to N. J. & T. A. Hammond, solicitors for defendants; and the defendants reserve the right to call up the said application for receiver, etc., on giving like notice to Dorsey, Brewster & Howell or Abbott & Smith, solicitors for the plaintiff.

"This 31st day of January, 1891."

It shows also this acknowledgment of service:

"I acknowledge due and legal service of the within bill, waiving copy, process, and copy of process, this 29th day of January, 1891.
    "[Signed]               W. T. Huguley,
                        "Alabama & Georgia Manufacturing Co.,
                            "Per N. J. & T. A. Hammond, Its Solicitors."

On February 10, 1891, solicitors for defendants, the Huguley Manufacturing Company and the Alabama & Georgia Manufacturing Company, in the bill of J. J. Robinson, trustee, against them and W. T. Huguley, entered their appearance. On February 13, 1891, the defendant the Alabama & Georgia Manufacturing Company submitted demurrers to the bill, and on June 9, 1891, filed an answer thereto, averring: "(1) The citizenship and residence of all the parties named in said bill are admitted as alleged." The answer proceeds at length, but presents nothing further material to the view we have taken of the case which we are now considering. Under this bill of foreclosure against the defendants, as therein stated, such proceedings were had as eventually resulted in passing of decrees for the sale of the mortgaged premises, the sale thereof, the confirmation of the sale and the acquisition of the possession thereof by the appellee.

On the 2d day of May, 1901, the appellants filed their bill in the proper state court of the state of Alabama, setting forth the charter of the Alabama & Georgia Manufacturing Company by the Legislature of Alabama, under the act of February 7, 1866, and averring that the complainant therein, the Alabama & Georgia Manufacturing Company (the appellant here), was seised and possessed of the property described in the mortgage to Robinson et al., trustees. It avers the execution of the mortgage by it on January 18, 1884. It sets forth the proceedings had in the bill filed by Robinson, trustee, against the Alabama & Georgia Manufacturing Company of Georgia, and charges that the Alabama corporation was not made a party to the Robinson bill, and avers that all of the judicial proceedings in Georgia are absolutely null and void in so far as they concern or affect the title of the complainants to the lands and property in Alabama, and that the equity of redemption in the Alabama property has not been cut off as to them. For certain purposes set out in the bill, certain other corporations besides the appellee and certain individuals are made defendants therein. The prayer is that the court adjudge and decree that complainants as mortgagors are entitled to redeem the mortgaged property, and that the equity of redemption has never been cut off by any of the said judicial proceedings had in the Robinson suit; that a reference to a

master be had to ascertain the amount of the debt, and take account of the rents and profits earned, or that should have been earned, and of all waste, damages, and conversions, etc., and for such relief as the nature of the circumstances of the case may require.

To this bill, filed in the state court of Alabama, the appellee, joined by the other corporations made respondents therein, filed their joint and separate answer, demurrer, pleas, and motion, the copy of which filed papers, as shown in the record, without the exhibits, covers 10½ closely printed octavo pages; in connection with which we note in the additional brief submitted for the appellee this language: "It was absolutely necessary to file an answer in the Chambers county suit within thirty days after the filing of said bill to prevent the rendition of a decree pro confesso." The exact date of the filing of this answer the record does not show. On June 10th the appellee obtained leave to file its bill in this case against the appellants, recounting the proceedings of the Robinson suit, and praying for temporary and perpetual injunction against the defendants restraining the prosecution of the Alabama suit or of any other similar suit.

On the same day the judge of the Circuit Court passed an order that the defendants named in the bill of complaint show cause on the 20th of June, 1901, why an injunction should not issue as prayed for. The record does not show that service was made on the Alabama & Georgia Manufacturing Company of Alabama, or on the Huguley Manufacturing Company of Alabama, but counsel of record for those companies in the Alabama suit, who were individually made parties defendant, acknowledged service for themselves individually, and the marshal returned that he had served subpœnas on W. H. Huguley and W. T. Huguley at West Point, Ga. On June 21st the defendants the Alabama & Georgia Manufacturing Company and the Huguley Manufacturing Company, averring themselves to be corporations created and organized under the laws of Alabama, and suing as such corporations of Alabama, and their solicitors, filed their answer to the rule to show cause and to the ancillary bill. It submits to the court that the bill is not ancillary, and that on its face it shows that the court is without jurisdiction to entertain it. It presents in various forms its objections to the jurisdiction of the court, and prays that the bill be dismissed for want of jurisdiction of the persons and subject-matter of the proceeding. On October 8th the judge granted a preliminary injunction. The complainant filed no replication to the answer of the defendants, nor were exceptions filed to the sufficiency of the defendant's answer. A motion was made by the appellee to strike the answer, but no action of the court was had thereon. The defendants appear to have stood on their objection to the jurisdiction of the court, supported by exhibits to their answer and by the face of the record, including in the record the proceedings in the Robinson suit. The final decree from which this appeal is taken, passed September 29, 1902, recites that, "this cause coming on further to be heard, it is submitted upon the bill and proceedings in this cause, ancillary to the proceedings in the cause lately pending in this court, of J. J. Robinson as trustee, etc., v. Alabama & Georgia Manufacturing Company et al., and upon the record in said last-named cause." The decree grants all of the relief

prayed for in the bill. The substance of the errors assigned is that the Circuit Court was without jurisdiction to try the case. The theory of the appellee and of its counsel appears, from the averments of the bill and the briefs and oral argument submitted on its behalf, to be that the Alabama & Georgia Manufacturing Company was one corporation; that it was created under and by virtue of the laws of the state of Georgia; that it was the only necessary mortgagor party defendant to the suit by the trustee to foreclose the mortgage on the property, situated partly in Georgia and partly in Alabama, constituting the whole of the property owned by the corporation of that name, and fully covered by its deed of trust; that the Huguley Manufacturing Company was created under and by virtue of the laws of the state of Georgia, and exists only as a corporation of that state; and that both of these corporations having been made parties defendant to the Robinson suit, wherein all the substantial issues raised and presented by the appellant's bill of complaint filed in the state court were, or could have been, exhaustively investigated, adjudged, and determined, are concluded by the decrees passed in that foreclosure proceeding. On the other hand, the contention of the appellant is that the Alabama & Georgia Manufacturing Company of Alabama and the Alabama & Georgia Manufacturing Company of Georgia are two different entities; that the latter only was made defendant in the Robinson suit, and that the former cannot be bound by that suit to which it was not a party; that it was not called upon by the proceedings against the Georgia corporation to take notice thereof, any more than any other stranger to that proceeding would have been required to do. It abundantly appears on the face of the record in the Robinson suit and in this suit that, in order to carry out the purposes of the creation of the Alabama & Georgia Manufacturing Company, it was originally necessary, and has continued to be important, that the company should control and use the water of the Chattahoochee river, and make the same available, by locks, dams, canals, or otherwise, for manufacturing purposes generally, requiring therefor the grant of the riparian rights of the state of Alabama and of the state of Georgia to the banks and shores and bottom of that river at the point where their manufacturing plant is located; that it could not take possession of these, nor continue to use them, without the express authority of each of those states; that authority could be conferred by the creation of separate corporations of the same name and composed of the same individuals as stockholders and officers, or it could be conferred by the creation of a corporation in only one of the states, and the express statutory license in the other state authorizing the foreign corporation so created to exercise in the second state the same powers and rights which had been given it by the state of its creation. It is not claimed that the last course indicated was either taken or attempted to confer on the Alabama & Georgia Manufacturing Company the power and authority to do business in each of these states in the institution and operation of its manufacturing enterprises. It is substantially and sufficiently shown that the first course suggested was adopted, and that the two companies, acting in harmony, conducted their manufacturing enterprises, and by the corporate name of the Alabama & Georgia Manu-

facturing Company, which was the name of each, executed the mortgage which was the basis of the Robinson foreclosure proceedings.

How far the unity of action in the prosecution of their enterprises by the two corporations may give such force to the decrees passed against one of them as may bind the other corporation in the matters affected by those decrees is a question which goes to the merits of the controversy, and is entirely beyond our inquiry into the jurisdiction of the Circuit Court to entertain this bill. Commencing, perhaps, with the case of Bank of the United States v. Devereaux, 5 Cranch, 61, 88, 3 L. Ed. 38, and continuing to the present, the character of duly created corporate bodies as parties to litigation had in the courts of the United States has been much discussed. In latter years the cases have chiefly arisen in connection with railroad corporations, but the doctrines announced apply to other corporations as well, and especially when, as the appellee alleges is the case here, the property and business of the corporation is held and conducted as an indivisible whole, located in two states, and the operation of it requires authority under the legislation of the respective states. A considerable number of cases are fully reviewed by the Supreme Court in its opinion in St. Louis & San Francisco Railway v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802. The statement of the result of that review is applicable to the case before us. It is as follows:

"There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit Court of the United States, is composed of citizens of the state which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon federal courts in 'controversies between citizens of different states.' It is competent for a railroad corporation, organized under the laws of one state, when authorized so to do by the consent of the state which created it, to accept authority from another state to extend its railroad into such state, and to receive a grant of powers to own and control, by lease or purchase, railroads therein, and to subject itself to such rules and regulations as may be prescribed by the second state. Such legislation on the part of two or more states is not, in the absence of inhibitory legislation by Congress, regarded as within the constitutional prohibition of agreements or compacts between states. Such corporation may be treated by each of the states whose legislative grants they accept as domestic corporations. The presumption that a corporation is composed of the citizens of the state which created it accompanied such corporation where it does business in another state, and it may sue and be sued in the federal courts in such other states as a citizen of the state of its original creation. We are now asked to extend the doctrine of indisputable citizenship so that if a corporation of one state, indisputably taken, for the purposes of federal jurisdiction, to be composed of citizens of such state, is authorized by the law of another state to do business therein, and to be endowed, for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second state, in such a sense as to confer jurisdiction on the federal courts at the suit of a citizen of the state of its original creation. We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power."

If, as the above language of the Supreme Court seems to show, it was beyond the legislative power of the state of Alabama to so combine the corporation it created with a corporation of Georgia of the same name, composed of the same individual stockholders, and operated by the same officers, that a suit in a federal court in Georgia against the

Georgia corporation by a citizen of Alabama should become a suit against the Alabama corporation, and have binding force on it as a party thereto, without ousting the jurisdiction of the court, it seems to us that, for a stronger reason, it must be beyond the power of the corporations themselves, by any system of conducting their business, to clothe themselves with such peculiar citizenship. To borrow the language of the Supreme Court, "we are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power."

As the appellants could not have been parties defendant to the Robinson bill without ousting the jurisdiction of the court, and that court could not pass a decree against their property rights in Alabama, and did not make any effectual decree conveying title out of them (if it could have done so), and they are not assignees or privy in estate to the defendants in that bill, and claim an independent source of title, the cases of French v. Hay, 22 Wall. 250, 22 L. Ed. 857, Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, and Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123, on which appellee relies, do not apply here.

It follows that the decree of the Circuit Court should be reversed, and the cause remanded to that court, with direction to dismiss the appellee's bill, without prejudice to the right of the appellee to defend the suit against it in the state court, or to otherwise maintain, in any court of competent jurisdiction, any rights which it may have against the appellants. And it is so ordered.

PARDEE, Circuit Judge (dissenting). We have before us for all purposes the entire record in Robinson v. The Alabama & Georgia Manufacturing Company and the Huguley Manufacturing Company et al. The question is whether or no the bill brought by the Riverdale Cotton Mills, purchasers under decrees in Robinson v. The Alabama & Georgia Manufacturing Company et al., is an ancillary and supplemental bill, within the cognizance and jurisdiction of the Circuit Court. I understand my Brethren to hold it to be an original bill, and, because of the citizenship of parties, beyond the jurisdiction of the Circuit Court.

A comprehensive statement of the facts of the case will be found, as recited by the Chief Justice, in Huguley Manufacturing Company v. Galeton Cotton Mills, 184 U. S. 290, 22 Sup. Ct. 452, 46 L. Ed. 546 et seq., and in Re Huguley Manufacturing Company and Alabama & Georgia Manufacturing Company, 184 U. S. 297 et seq., 22 Sup. Ct. 455, 46 L. Ed. 549. If more details and facts are required to properly understand the matter in hand, they will be found in the opinions of Mr. Justice Lamar and Judge Newman in Robinson v. Alabama & Georgia Manufacturing Company (C. C.) 48 Fed. 12; in the elaborate opinions of Judge McCormick in Manufacturing Co. v. Robinson, 56 Fed. 690, 6 C. C. A. 79; Id., 72 Fed. 708, 19 C. C. A. 152; in the opinion of Judge Newman in Robinson v. Manufacturing Co. (C. C.) 89 Fed. 218; and in the well-considered opinion of Judge Shelby in Huguley Manufacturing Company v. Galeton Cotton Mills, 94 Fed. 269, 36 C. C. A. 236—all prepared when we thought we were

dealing with substantial rights in a case where the jurisdiction is affirmatively shown by the pleadings and admissions of the parties.

In the record now before us it appears that the owners, promoters, and stockholders of the Alabama & Georgia Manufacturing Company, located on the state line between Georgia and Alabama, saw fit to procure a like charter of incorporation in each state, with the same corporators, the same stockholders, to own and manage the same property. In fact, there was only one real body, although it was chartered in two different states; there was only one property, although it was located in two different states; there was only one business, although it may have been carried on by a body incorporated in both states.

It is contended that, because the Alabama & Georgia Manufacturing Company was incorporated in the state of Georgia and in the state of Alabama, there were two distinct and separate legal entities—twins in law and in fact. If this contention be sound, then the fact that these twins in law had the same corporators, the same stockholders, the same officers, the same property, and the same business requires their assimilation to the celebrated Siamese twins, so united that wherever one was the other was necessarily present, and requires the holding that whatever was the act of the one was necessarily the act of the other. And it also seems clear that, if they were two separate legal entities, in regard to the one plant and the one property and the one business, each was the full agent of the other, and each was bound by the other's transactions. Whenever a bale of cotton was bought for the cotton mills or a yard of cloth was sold from the same, whether transacted by the Alabama & Georgia Manufacturing Company of Alabama or the Alabama & Georgia Manufacturing Company of Georgia, it was complete and binding on both; and also when the board of directors of both these corporations, acting for and in the name of the Alabama & Georgia Manufacturing Company (wherever incorporated) in 1883, granted the mortgage, which was the subject of foreclosure in the main suit in this case, without specifying which particular corporation was acting, each corporation was privy thereto, and the mortgage then executed was the mortgage of both "entities" and binding upon both "entities."

When thereafter, in 1888, a bill was filed against said corporation (without naming the state granting the charter) in the superior court of Troup county, state of Georgia, wherein a receiver was appointed and contradictory proceedings had, and wherein thereafter, on a full hearing, a decree was rendered directing the sale of all the property of the Alabama & Georgia Manufacturing Company subject to the mortgage before referred to, and whereunder a sale of all the said property subject to the mortgage aforesaid was made to the Huguley Manufacturing Company, that proceeding was binding upon each and both of the said alleged "entities," and thereafter neither of them had any equity of redemption or other pecuniary interest in the mortgaged property.

In the original suit of foreclosure herein the Alabama & Georgia Manufacturing Company was made a party, with the allegation that it was a corporation created under and by virtue of the laws of the state of Georgia. Whether the complainants in that bill knew of the

Alabama charter does not appear; but it does appear that counsel of the highest rank at the Georgia bar entered their appearance as solicitors for the Alabama & Georgia Manufacturing Company, and thereafter, in an answer duly filed, confessed as follows: "The citizenship and residence of all the parties named in said bill are admitted as alleged."

A further fact appears from the answer filed in that case, that the Alabama & Georgia Manufacturing Company had for many years ceased to do business; that all the business that formerly was owned and carried on by the Alabama & Georgia Manufacturing Company was owned and carried on by the Huguley Manufacturing Company. As to the Huguley Manufacturing Company, there is an averment in the original bill that said company is a corporation created under the laws of the state of Georgia, and that allegation is fully admitted in the first answer filed.

The record shows that a Huguley Manufacturing Company was incorporated under the laws of the state of Alabama, and it is now averred, and is probably true, that the said Huguley Manufacturing Company was never incorporated in Georgia. The case against it, if presented on the theory that it was incorporated in both states, is the same as that against the Alabama & Georgia Manufacturing Company, with this difference: that the Huguley Manufacturing Company and parties claiming thereunder are the real parties in interest, and have been the active, persistent defendants in this long-pending litigation; and the record shows that the said Huguley Manufacturing Company, without a whisper as to any double charter, in various instances petitioned for relief, was granted an accounting for the time elapsing between the first and second degrees, and actually drew therefrom the proceeds.

If, as the record now shows, the Huguley Manufacturing Company was never incorporated in the state of Georgia, then it is no twin entity (even of the Siamese variety), and in this litigation it occupies the position of a party who has falsely admitted his citizenship for the purpose of conferring jurisdiction, and thereafter losing his suit has repudiated the same.

However this may be, and on the ground that both of these legal "entities" were chartered in both states, then it is clear to me that if the Alabama & Georgia Manufacturing Company chartered in Alabama, and the Huguley Manufacturing Company chartered in Alabama, are separate "entities" from the corporations of the same name chartered in the state of Georgia, then they should be held to be joint tenants, privies in estate, and both fully bound by the proceedings had in the foreclosure suit. Under the circumstances, to hold otherwise, and permit the relitigation of all the issues in the case in another court, and before another tribunal, is to not only rob the parties who have litigated for these many years in the Circuit Court and appellate courts of all the fruits of the decrees rendered, but remit the purchasers of the mortgaged property, who have relied upon solemn decrees of the Circuit Court, wherein jurisdiction was apparent of record, to other and foreign tribunals, to relitigate the foreclosure of the mortgage granted

by this alleged hybrid, and probably be forced into another accounting with the Huguley Manufacturing Company of the business and transactions of a large cotton mill and plant for the last ten years.

I do not say this would be a travesty on the administration of justice, though it looks much like it, but I must say that, through and by the result now reached in this court, we judges, to say nothing of the learned justices and judges of the Supreme and Circuit Courts, have spent considerable time and labor in wrestling with hypothetical questions in a moot case, when we really thought we were passing upon substantial issues and rights, and when honesty and fair dealing required the Alabama & Georgia Manufacturing Company and the Huguley Manufacturing Company and their counsel—unless they also were tricked—to make full disclosure of their citizenship and status as litigants.

My conclusions in this case can be shortly stated as follows: The Alabama & Georgia Manufacturing Company, wherever and how often incorporated, has no interest in this litigation, and is not a necessary or indispensable party, because long before the original bill was filed it had parted with its equity of redemption, and it had gone out of business and was practically defunct. If, however, it is to be treated as a party having any interest, then, as it was chartered in both Alabama and Georgia, the two legal "entities" resulting were joint tenants and privies in the mill property; and in all the litigation carried on in the main case, wherein the Georgia corporation appeared and litigated, the Alabama corporation was a privy, and as fully bound as privies can be bound in any decree.

The Huguley Manufacturing Company was in fact only chartered in Alabama, and on its appearance and its pleadings and admission in the answer to the first bill it is fully and conclusively bound by the decrees rendered until they are judicially vacated and annulled. The bill filed by the Riverdale Cotton Company is, if definitions are worth anything, an ancillary and supplemental bill, within the jurisdiction ratione materia of the Circuit Court on the facts stated therein, and within that court's jurisdiction ratione personæ, through the prompt appearance of the defendants named therein.

I have not thought it necessary to support any legal proposition made herein with citations of adjudged cases, as those made seem too plain to require it, nor have I thought it necessary to review the cases cited in the opinion of the court, as I consider them all inapplicable to the real questions involved herein. Questions of jurisdiction and of the corporate entities of parties, when raised in limine, should and do receive careful attention; but the principles therein involved are not at all applicable in determining who are the actual parties and privies bound in a concluded litigation, where the court has been deceived by false allegations and fraudulent admissions into passing upon the merits involved.

There are some other questions raised in the assignments of error, the proper determination of which might require the reversal of the decree below, and a remand for further proceedings; but, as my Brethren insist on a dismissal of the bill for want of jurisdiction, it is

not necessary to consider them. For the reason here given, and many others that could be given, I respectfully dissent from both the opinion and decree of the majority of the court.

### On Petition for Rehearing.

(February 9, 1904.)

PER CURIAM. The petition for rehearing in this case is denied.